NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2018
Decided August 5, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1122

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 17-CR-20026-01 |
| CARTAVIUS FARRINGTON, *Defendant-Appellant*. | Colin S. Bruce, *Judge*. |

**O R D E R**

Cartavius Farrington pleaded guilty to possessing 28 grams or more of crack cocaine with the intent to distribute. The district court sentenced Farrington to 240 months in prison and a term of supervised release. The judge discussed the statutory sentencing factors, including "the need to avoid unwarranted sentencing disparities." To that end, the judge compared Farrington to five similar defendants he had previously sentenced. But he did not name those defendants. Farrington says that was a procedural error: when the judge relied on undisclosed facts, he denied Farrington the opportunity to rebut the comparison. Because any error in this case was

harmless, resentencing is unnecessary. We affirm Farrington's below-Guidelines sentence.

## I. Background

In March 2017 Farrington visited a house in Decatur, Illinois, that was under police surveillance for drug activity. Officers saw Farrington commit two traffic infractions after leaving the house. When an officer approached Farrington's car on foot, Farrington sped away—reaching speeds of 80 miles per hour in a residential neighborhood—and eventually crashed into a tree. Officers found crack cocaine in his vehicle and bags of powder and crack cocaine scattered along his route. A grand jury indicted Farrington, and he eventually pleaded guilty to one count of possession with the intent to distribute 28 grams or more of crack cocaine. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B). The presentence report calculated a Guidelines range of 262 to 327 months in prison based in part on Farrington's status as a career offender under U.S.S.G. § 4B1.1.

Farrington's counsel submitted a detailed written "sentencing commentary." She did not dispute his career-offender status or the calculations in the presentence report. She argued instead for a below-Guidelines sentence of 120 months, the mandatory minimum. § 841(b)(1)(B). Given Farrington's personal characteristics and history, counsel maintained that a within-Guidelines sentence would be "far greater than necessary to meet the goals of sentencing." She emphasized Farrington's rehabilitative potential, his lack of prior violent offenses, and the fact that he'd spent far less time in prison than most career offenders. She pointed out that but for his career-offender status, his Guidelines range would be 92 to 115 months. Moreover, 10 of his 18 criminal-history points were for driving on a suspended license—and the most recent offense was four years old. So the judge wouldn't be creating sentencing disparities if he disregarded Farrington's career-offender status because his record was "amateurish and distinctly less serious" than that of most career offenders. The government did not respond.

At the sentencing hearing, the district judge expressed concerns that Farrington's "very articulate" written § 3553(a) submission may have "ambushed" the government. To ensure a "clean record," the judge instructed the government to file a written response and stayed the hearing. The government's response requested a 262-month sentence, the bottom of the Guidelines range. When the hearing resumed a month later, the government urged the court to avoid sentencing disparities and compared Farrington to two defendants with "very similar criminal histories" who received sentences of 204 months and 210 months, after accounting for cooperation variances

that did not apply to Farrington. Farrington contested one of those comparisons, arguing that the comparator's history was "significantly worse."

The judge explained that while he "didn't put a lot of weight behind" some of Farrington's convictions, his admitted career-offender status made it "inappropriate" to "disregard the career-offender guidelines." Moreover, Farrington's prior sentences hadn't done "anything" to get him to "respect the law." This sentence needed to provide "adequate deterrence for others" and "protect the public from further crimes" committed by Farrington. Finally, the judge noted that Farrington's high-speed flight from police placed the public in extreme danger.

At this point in his discussion of the § 3553(a) factors, the judge turned to "the need to avoid unwanted sentencing disparities." The judge explained that he'd "compared Mr. Farrington to five other defendants [he'd] had in similar situations." He continued: "I have a little chart that I keep. Most of them[] … either received a sentence within the [G]uidelines if they were career offenders or shortly below that if I thought there was some other factor that warranted some type of deviation." One such factor was present here—namely, Farrington's lack of significant prison time. So the judge deviated from the Guidelines range, which he called "exceptionally high," and sentenced Farrington to 240 months in prison, almost two years below the bottom of the Guidelines range.

As soon as the judge finished discussing the terms of the sentence, Farrington's attorney asked him to "clarify Mr. Farrington's background in relation to the[] five individuals the [c]ourt discussed." But the judge's response conveyed nothing about the five comparator defendants. He merely reiterated two reasons for his downward departure: Farrington's "history of nonviolence" and "minimal amount of time … in prison."

## II. Discussion

Farrington argues that the judge's use of a chart of past sentences—without offering more information about the comparator defendants—was a procedural error. By doing so, Farrington contends, the judge impermissibly relied on contestable information. Without the relevant comparator defendants' histories, Farrington couldn't evaluate the judge's analogy. Farrington also argues that the judge failed to offer an adequate explanation for the sentence. The government maintains that Farrington either waived or forfeited these challenges and that the judge made no procedural errors.

Farrington has neither waived nor forfeited his challenges. The contested remarks about the "little chart" came just moments before the judge set Farrington's 240-month prison term. The judge had "made a decision" and "definitively" announced the sentence. *United States v. Gabriel*, 831 F.3d 811, 814 (7th Cir. 2016). So Farrington didn't need to take exception to the judge's reliance on the unknown comparators to preserve his arguments for appeal. *See* FED. R. CRIM. P. 51(a); *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018). In any event, Farrington's counsel preserved his procedural challenge when she asked the judge—at the first available opportunity—to clarify his analogy to the five comparator defendants. We therefore review the judge's sentencing procedure de novo. *United States v. De La Cruz*, 897 F.3d 841, 844 (7th Cir. 2018).

This case sits at the intersection of long-established sentencing principles. First, Congress instructs district courts to avoid unwarranted sentencing disparities. § 3553(a)(6). To avoid such disparities, a judge may consider defendants from multiple districts as well as codefendants in the same case. *See United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. 2018). By implication, therefore, a judge may consider his own prior sentencings of similarly situated defendants. For his part, a defendant has the right to be sentenced based on reliable information. *United States v. Oliver*, 873 F.3d 601, 608 (7th Cir. 2017) (explaining that "a sentencing court commits a significant procedural error if it select[s] a sentence based on clearly erroneous facts") (quotation marks omitted, alteration in original). So a defendant is entitled to a "meaningful opportunity to rebut the information" that a judge considers during sentencing. *U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 865 n.3 (7th Cir. 1984) (citing *United States v. Harris*, 558 F.2d 366, 375 (7th Cir. 1977)). Finally, the judge must "adequately explain the chosen sentence to allow for meaningful appellate review." *Gall v. United States*, 552 U.S. 38, 50 (2007).

Farrington argues that by citing a confidential chart of comparator defendants without providing any information about those defendants' records, the judge denied him that meaningful opportunity and frustrated our appellate review. We see no need to resolve that dispute here, however, because any procedural error in this case was harmless. A procedural sentencing error is harmless if the sentence would have been the same without the error. *United States v. Prado*, 743 F.3d 248, 253 (7th Cir. 2014).

Here, the judge's use of the chart containing five (purportedly) similarly situated defendants did not determine Farrington's 240-month prison term. The judge's disparity analysis merely corroborated his approach to sentencing Farrington. Before considering § 3553(a)(6)'s command to avoid unwarranted sentencing disparities, the

judge discussed Farrington's criminal history at length. He referenced Farrington's "multiple felony drug convictions," the struggle to find "anything … to get [Farrington] to respect the law," the need for "adequate deterrence for others," and Farrington's high-speed flight from police. Based on this behavioral pattern, the judge used the career-offender Guidelines range as his starting point. But that range was "exceptionally high," so the judge gave Farrington a below-Guidelines sentence (indeed, a prison term substantially below the range) based on mitigating factors: his lack of prison time and his nonviolent record.

This set of circumstances—a career offender with mitigating factors facing an extremely long prison term—was apparently familiar to the judge, as his discussion of the chart indicates. But nothing in the hearing transcript suggests that his decision hinged on the comparator defendants. And there's no indication that the judge would have imposed a more lenient sentence absent the claimed procedural error. The judge had settled on a theory of the case and worked within that framework. But his sentence wasn't predetermined by past practice.

Farrington next argues that his sentence is substantively unreasonable because he is not a "typical" career offender. "We review the district court's substantive sentencing determinations for abuse of discretion." *De La Cruz*, 897 F.3d at 844. Farrington reiterates his nonviolent record and minimal prison time, and reminds us that the judge "didn't put a lot of weight behind" one of his two predicate offenses. But none of those factors—in isolation or in concert—renders Farrington's sentence unreasonable. While a sentencing judge is free to disregard the career-offender enhancement, *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) (en banc), he is never compelled to overlook it. And a judge clearly doesn't abuse his discretion when he applies the enhancement to a defendant who *concedes* his career-offender status. Moreover, a below-Guidelines sentence like Farrington's is presumptively reasonable. *United States v. Purham*, 795 F.3d 761, 765 (7th Cir. 2015) (citing *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008)). Nothing in this record rebuts that presumption. To repeat, the judge used a pair of reasonable mitigating factors to reduce an admitted career offender's prison term well below the low end of the Guidelines range.

Finally, Farrington argues that "the district court put its thumb on the adversarial process" in favor of the government. The judge stayed the sentencing hearing and ordered the government to respond in writing to Farrington's "pretty detailed" and "very articulate" presentence argument for a substantial variance from the career-offender Guidelines. Farrington characterizes that decision as an attempt by

the judge to generate a more favorable record for his predetermined outcome. We disagree. As the judge explained, he simply wanted a full airing of the relevant arguments before he ruled on them. We are unwilling to assume that the judge's reasonable delay and request for a written response from the government was improperly motivated.

For these reasons, Farrington's sentence is AFFIRMED.